BROOKE CREDIT CORPORATION,
Plaintiff,

v.

BUCKEYE INSURANCE CENTER,
Defendant,

v.

Brooke Franchise Corporation,
Counterclaim Defendant.

No. 07–1322–JTM.

United States District Court,
D. Kansas.

June 27, 2008.

Kasey A. Rogg, Aleritas Capital, Inc., Overland Park, KS, for Plaintiff.

Darcy V. Hennessy, Leslie A. Boe, Moore & Hennessy, P.C., Kansas City, MO, Ross M. Rosenberg, Rosenberg LPA, Cincinnati, OH, for Defendant.

Mark S. Gunnison, Payne & Jones, Chtd., Overland Park, KS, for Counterclaim Defendant.

## MEMORANDUM AND ORDER

J. THOMAS MARTEN, District Judge.

Brooke Franchise, based in Overland Park, Kansas, franchises insurance agencies throughout the United States. As part of its operations, Brooke Franchise buys the assets of insurance agencies and sells or assigns them to third parties. Buyers of the assets then operate those assets as Brooke Franchise pursuant to a franchise agreement. Franchisees may obtain credit for the purchase of such assets from Brooke Credit Corporation. Non party Brooke Corporation is the owner of Brooke Franchise and the majority owner of Brooke Credit. Brooke Credit acts as a finance company for the capital needs (primarily for business acquisitions) of the franchisees of Brooke Franchise.

Defendant Buckeye Insurance Company, is an Ohio limited liability company, one such franchisee.

Plaintiff Brooke Credit (now know as Aleritas Capital) began the present action in Kansas State Court. Brooke Credit alleged that Buckeye breached its obligations arising from a loan for the purchase of three insurance agencies in Chicago, Illinois. Buckeye removed the action to the present action. Buckeye raised several affirmative defenses against Brooke Credit; it also advanced four counterclaims against Brooke Franchise, including breach of contract, breach of the duty of good faith and fair dealing, fraudulent inducement, and quantum meruit.

Buckeye and Brooke Franchise entered into two written agreements on February 28, 2007, an Assignment Agreement, under which Brooke Franchise transferred and assigned to Buckeye its interests relating to certain insurance agencies in Illinois, and a Franchise Agreement, under which Brooke Franchise would provide accounting and processing services for Buckeye. Both Agreements contain arbitration provisions.

Page 2 of the Assignment of Interest in Purchase Agreement provides as follows:

Any issue, claim or dispute that may arise out of or in connection with this assignment (including any exhibits, addenda or other document executed in connection herewith) and which Assignee and Brooke are not able to resolve themselves by mediation, shall be submitted to binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in a court having jurisdiction thereof. The locale for arbitration shall

be in the Kansas City, Missouri metropolitan area. Assignee and Brooke agree to use arbitration to resolve such issue, claim or dispute in lieu of filing any lawsuits, complaints, charges or claims. In the event a proceeding is brought with respect to this Assignment, the prevailing party shall be entitled to be reimbursed for and/or have judgment for all of their costs and expenses, including reasonable attorney's fees and legal expenses.

(Def. Exh. A, Nourse Aff., ¶ 9 and Exhibit 1 thereto, p. 2).

The Franchise Agreement provides:

Any and all issues, claims, disputes or controversies arising out of, in connection with or relating to the Franchise Agreement (including addenda and exhibits hereto), the relationship of the parties and/or the authority to determine whether this arbitration clause is valid and enforceable which the parties are not able to resolve through mediation shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules and applying Kansas law. Notwithstanding any other provision of this Agreement, arbitration shall take place in Kansas City, Missouri, or if no hearing office is available in Kansas City, Missouri, arbitration shall be held at a location in the Kansas City metropolitan area. The arbitrator shall have the authority to issue injunctions, stays and writs. Judgment on the award rendered by the arbitrator(s) may be entered in a court having jurisdiction thereof. The parties agree to use arbitration to resolve any such issue, claim, dispute or controversy in lieu of filing any lawsuits, complaints, charges or claims.

(Def. Exh. A, ¶ 9 and Exh. 2 attached).

Pursuant to the Franchise Agreement, Brooke Franchise performed accounting and processing services for Buckeye's Illinois franchise insurance agencies. Brooke Franchise does so from its Overland Park or Phillipsburg, Kansas office. As part of the accounting under the Franchise Agreement, Brooke Franchise makes electronic funds transfers to credit and debit various accounts. Also as part of the Franchise Agreement (e.g., ¶ 8.1), Buckeye has the ability to apply for insurance coverage for its clients through various "Companies." The "Companies" are located throughout the United States. (Exhibit A, ¶ 8).

Federal policy, manifested in the Federal Arbitration Act, strongly supports arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). That policy supports a presumption of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The statute here requires arbitration of the claims advanced in Buckeye's counterclaim. The court finds that defendant has presented evidence sufficient to demonstrate an enforceable agreement to arbitrate. *See, e.g., Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995).

Buckeye contends that arbitration is not required because there was no "meeting of minds" leading to any valid agreement, since it was entered into the Agreements only because of Brooke Franchise's fraud. It also contends that its various specific claims for relief, including its claim of fraud, are not covered by the arbitration clauses in the Agreements in question.

Buckeye's first argument is without merit. While the defendant strains mightly to avoid the term, it is apparent that its "meeting of minds" argument is in fact a claim of fraudulent inducement. Further, it is apparent that the fraud argument is not restricted to the arbitration clauses

alone, but to the entire contract as manifested in the Agreements incorporating those clauses.

 The Supreme Court has concluded that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *See also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). Buckeye's characterization of its claim as an absence of a "meeting of minds" does not alter the reality of its fraudulent inducement claim. *See Prima Paint,* 388 U.S. at 408, 87 S.Ct. 1801 (Black, J., dissenting) (noting plaintiff in that action had "simply contended there was never a meeting of minds between the parties"). Thus, Buckeye's argument that the Agreements were obtained by fraud is itself subject to arbitration.

 Buckeye's arguments with respect to the coverage of the Agreements are equally without merit. The arbitration clauses are broadly worded, requiring arbitration of "[a]ny and all issues, claims, disputes, or controversies" which "aris[e] out of, in connection with, or relat[e] to" one of the Agreements in question. These clauses are certainly broad enough to include the various claims, however denominated, advanced by Buckeye in its counterclaim.

IT IS ACCORDINGLY ORDERED this 27th day of June, 2008, that the coun-terclaim defendant Brooke Franchise's Motion to Dismiss or Compel (Dkt. No. 29) is hereby granted such that the Court finds that defendant Buckeye's counterclaim against Brooke Franchise is subject to arbitration, that Buckeye shall submit such claims for arbitration before the American Arbitration Association, and that the present action is hereby stayed as to Brooke Franchise pending resolution of such arbitration.